IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SHANE SPEROW,                          :
    Plaintiff,                     :
                                   :
v.                                     :        CIVIL ACTION NO. 20-CV-1495
                                   :
BERKS COUNTY SHERIFF'S                 :
DEPARTMENT, *et al.*,                  :
    Defendants.                    :

## MEMORANDUM

PADOVA, J.                                                    MAY  8 , 2020

Plaintiff Shane Sperow, a state prisoner who is representing himself (proceeding *pro se*) brings this civil action against several Berks County Defendants based on allegations that they violated his constitutional rights by seizing and failing to return his property, including several firearms.  Sperow also filed a Motion for Leave to Proceed *In Forma Pauperis* and a copy of his Prisoner Trust Fund Account Statement for the six-month period preceding the filing of this case. (ECF Nos. 1 & 3.)  For the following reasons, the Court will grant Sperow leave to proceed *in forma pauperis*, dismiss his federal claims as time-barred, and dismiss his state claims for lack of subject matter jurisdiction.

## I.        FACTUAL ALLEGATIONS

The Complaint names the following seven Defendants: (1) the Berks County Sheriff's Department ("Sheriff's Department"); (2) Eric J. Weaknecht, identified as the Sheriff; (3) Timothy Moore, identified as a Captain within the Sheriff's Department; (4) Edward Winters, identified as the Deputy Sheriff; (5) the Berks County Probation Department ("Probation Department"); (6) Daniel Heydt, identified as the Deputy Chief of the Probation Department; and

1

(7) Brian D. Harting, identified as a Probation Officer.  (Compl. ECF No. 2 at 16.)[1]  Sperow sued the Defendants in their individual and official capacities.

Sperow was arrested on April 19, 2014 and charged with, among other things, aggravated assault of a victim less than six, terroristic threats with intent to terrorize another, and endangering the welfare of children.  (*Id.* at 19); *see Commonwealth v. Sperow*, CP-06-CR-0001974-2014 (Berks Cty. C.P.).  Two days later, Sperow's then-fiancée obtained a protection from abuse order ("PFA") against him.  (*Id*. at 20.)  As a condition of the PFA, Sperow was required within twenty-four hours to relinquish any firearms to the Berks County Sheriff's Department or a qualified third party.  (*Id*.)  He was also prevented from returning to the residence he shared with his then-fiancée to retrieve his property.  (*Id*.)

On April 23, 2014, Defendants Moore and Winters, acting on behalf of the Sheriff's Department, seized fifteen firearms belonging to Sperow from the residence he shared with his then-fiancée.  (*Id*. at 20-21.)  According to Sperow, he was "not afforded any opportunity to retrieve and transfer his legally owned firearms" before they were seized.  (*Id*. at 20.)  He adds that he was not served with the PFA until April 28, 2014.  (*Id*. at 22.)  Sperow requested receipts for his property from the Sheriff's Department and inquired as to the proper procedure for transferring possession to a designee; he was told that his firearms could not be returned or transferred while the PFA order was in place.  (*Id*. at 22.)

On August 13, 2014, Sperow pled guilty to simple assault in the criminal case against him and was sentenced to two years of probation.  (*Id*.)  As a condition of probation, Sperow was prohibited from possessing firearms.  (*Id*.)  Five days later, the PFA was dismissed.  (*Id*.)  Accordingly, Sperow asked to transfer possession of his firearms to a designee, but his request

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

was denied by the Sheriff's Department.  (*Id*.)  Sperow alleges he obtained written approval from Defendants Heydt and Harting of the Probation Department to transfer possession of the firearms, but despite being presented with that documentation, the Sheriff's Department refused to transfer the firearms to Sperow's designee.  (*Id*. at 23.)

On October 15, 2015, Probation Officer Harting arrested Sperow for failure to comply with the terms of his probation.  (*Id*.)  Sperow was at his then-fiancée's residence at the time of the arrest, and Sperow alleges that Harting searched the residence without a warrant or a legal basis for the search.  (*Id.* at 23-26.)  Several items were confiscated during the search of the residence, including knives, ammunition, and other weapons.  (*Id.* at 26-28.)  Sperow avers that he did not receive receipts describing the confiscated property until July 18, 2017 and August 7, 2017, and only then after numerous requests.  (*Id.* at 29.)  The receipts reflected that Harting conducted a second search of the residence on October 16, 2015 and seized additional items belonging to Sperow.  (*Id.*)

On October 17, 2015, Sperow was charged with "prohibited offensive weapons" based on evidence obtained during the searches.  (*Id.* at 29-30); *see also Commonwealth v. Sperow*, CP-06-CR-0005775-2015 (Berks C.C.P.).  On February 8, 2016, Sperow pled guilty and was sentenced to two years of probation on the 2015 charge and a term of six to twenty-three months of imprisonment for violating probation in his 2014 case.[2]  (ECF No. 2 at 30.)

---

[2] At his sentencing hearing, Sperow provided a "a document claiming that he had been deployed as a United States Marine in Iraq, Afghanistan, Somolia, [sic] and other locations, and had been awarded two Purple Hearts and a Bronze Star as a result of his heroic service, when he in fact had never served in the Marines." *Commonwealth v. Sperow*, No. 1619 MDA 2018, 2019 WL 3231727, at *1 (Pa. Super. Ct. July 17, 2019).  In 2016, Sperow was charged with and pled guilty to unsworn falsification to authorities based on that document.  *Id.*

3

On September 12, 2016, Sperow filed motions for the return of his property in both of his criminal cases.  (*Id.*)  Ten days later, he sent a letter to the Sheriff's Department asking to transfer possession of his firearms to a designee but did not receive a response.  (*Id.*)  The Court of Common Pleas denied Sperow's motion on September 23, 2016.  (*Id.*)  According to Sperow, the denial was erroneous because he did not receive a hearing.  (*Id.*)  Sperow appealed, arguing that he was entitled to the return of his property because it was seized illegally and because the Sheriff's Department failed to respond to his repeated requests to retrieve or transfer possession of the property.  (*Id.* at 31.)  On January 10, 2017, Sperow's appeal was quashed.  (*Id.* at 33); *see also Commonwealth v. Sperow*, 1799 MDA 2016 (Pa. Super. Ct.).  He filed a petition for allowance of appeal with the Supreme Court of Pennsylvania, which was denied on August 8, 2017, followed by an unsuccessful motion for reconsideration, which was denied on September 15, 2017.  (ECF No. 2 at 34-35); *see also Commonwealth v. Sperow*, 134 MAL 2017 (Pa.).

In the meantime, on August 10, 2017, Sperow's designee was permitted to retrieve certain of his property from Probation Officer Harting, which did not include Sperow's firearms.  (ECF No. 2 at 35-36.)  On October 14, 2017, following another request, Sperow received a list of his firearms confiscated by the Sheriff's Department.  (*Id.* at 37.)  Thereafter, Sperow wrote a letter to Sheriff Weaknecht requesting that the Sheriff "please personally assist him in determining the status and whereabouts of his firearms, and what process he has to compete so that his firearms can finally be transferred to his POA, since all of his efforts so far have allegedly been improper."  (*Id.*)  He received a response from an attorney on January 22, 2018, which asserted that he was "now ineligible to possess firearms, thus his firearms will not be returned to him, nor will [he] be permitted to transfer his property to a third party."  (*Id.*)  Sperow disagrees with that assessment for various reasons, including his belief that the initial seizure was

improper.  (*Id*. at 37-38.)  Sperow wrote another letter, to which he received a response on April

19, 2018 "stating in part that his firearms would not be returned due to the time period for their

return being expired."  (*Id.* at 38.)

Based on those allegations, Sperow asserts various constitutional claims based on the

seizure of his property, the searches that led to the seizure of his property, and the failure to

return his firearms.  (*Id.* at 17.)  First, he claims he was denied due process because his firearms

and other property was seized without a hearing or other process, he was not permitted to

transfer possession of his firearms to a third party after the PFA was dismissed on August 18,

2014, and his motion for return of his property was denied without a hearing.  (*Id.* at 39.)

Second, Sperow asserts Fourth Amendment claims based on the seizures of his property that

occurred on April 23, 2014, and October 15 and 16, 2015.  (*Id.* at 40.)  Third, Sperow asserts

Fourth Amendment and Fourteenth Amendment (presumably due process) claims because

Defendants deprived him of his property and refused to transfer that property to a designee.  (*Id.*

at 41.)  Fourth, Sperow contends that the seizure of his property violates the Eighth Amendment.

(*Id.* at 42.)  Fifth, Sperow alleges that his Sixth Amendment rights were violated because he was

unable to sell the seized property to pay for criminal defense counsel.  (*Id.* at 42.)  Sixth, Sperow

alleges that his Second Amendment rights were violated when he was not permitted to transfer

possession of his firearms to a third party.  (*Id.* at 43.)  Sperow also purports to raise claims

under Pennsylvania law.  (*Id.*)  He seeks various declarations that his rights have been violated,

an injunction directing the return of his firearms or transfer to a third party, and damages.  (*Id.* at

44-45.)

## II.     STANDARD OF REVIEW

The Court grants Sperow leave to proceed *in forma pauperis* because it appears that he is not capable of paying the fees to commence this civil action.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  The Court may also consider matters of public record.  *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).  Additionally, the Court may dismiss claims based on an affirmative defense if the affirmative defense is obvious from the face of the complaint.  *See Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017) ("A complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint.").  As Sperow is proceeding *pro se*, the Court construes his allegations liberally.  *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

The Court must also review the pleadings and dismiss the matter if it determines that the action fails to set forth a proper basis for this Court's subject matter jurisdiction.  28 U.S.C. § 1915(e)(2)(B); Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Group Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua*

*sponte*").  A plaintiff commencing an action in federal court bears the burden of establishing

federal jurisdiction.  *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015)

("The burden of establishing federal jurisdiction rests with the party asserting its existence."

(citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006))).

## III.   DISCUSSION

### A.   Section 1983 Claims

Sperow's § 1983 claims are clearly time-barred.  Pennsylvania's two-year statute of

limitations applies to these claims.[3]  *See* 42 Pa. Cons. Stat. § 5524; *Wallace v. Kato*, 549 U.S.

384, 387 (2007).  His claims accrued when he "ha[d] a complete and present cause of action, that

---

[3] Sperow notes that the Pennsylvania Commonwealth Court has applied a six-year statute of limitations to motions for the return of property, (ECF No. 2 at 43), although it is not clear that rule applied to the motion Sperow filed in his criminal case.  *Compare In re Return of Pers. Prop.*, 180 A.3d 1288, 1293 (Pa. Commw. Ct. 2018) (holding that six-year statute of limitations applies to petition for the return of property seized by police where movant was not a party to the related criminal proceedings) *with Commonwealth v. Allen*, 107 A.3d 709, 717 (Pa. 2014) (holding that a criminal defendant who fails to move for the return of property related to a criminal prosecution during the pendency of a criminal proceeding or within 30 days of its termination has waived the issue).  To the extent Sperow's Complaint can be read to suggest that a six-year statute of limitations applies to his § 1983 claims based on the deprivation of his property, that suggestion is incorrect.  "A section 1983 claim is characterized as a personal-injury claim and thus is governed by the applicable state's statute of limitations for personal-injury claims." *Dique v. New Jersey State Police*, 603 F.3d 181, 185 (3d Cir. 2010).  Accordingly, Pennsylvania's two-year statute of limitations applies regardless of whatever limitation period applies to petitions for return of property.  *See Reitz v. Cty. of Bucks*, 125 F.3d 139, 143 (3d Cir. 1997) (applying Pennsylvania's two-year statute of limitations to claims based on failure to return property, noting that "well-founded causes of action under section 1983 are best characterized as tort actions for the recovery of damages for personal injuries" and that other limitations periods are "irrelevant"); *see also Lewicki v. Washington Cty., Pa.*, 431 F. App'x 205, 208 n.1 (3d Cir. 2011) (applying Pennsylvania's two-year statute of limitations for personal injury claims to constitutional claims based on deprivation of property over plaintiff's assertion "without citation to any controlling authority, that their action should be governed by the Pennsylvania six-year statute of limitations").

is, when [he could] file suit and obtain relief." *Dique*, 603 F.3d at 185 (quotations omitted).

Pursuant to the prison mailbox rule, a prisoner's complaint is considered filed at the time he

hands it over to prison authorities for forwarding to the Court. *See Houston v. Lack*, 487 U.S.

266, 276 (1988).

However, the limitations period may be tolled in accordance with Pennsylvania law.

*Dique*, 603 F.3d at 185.   Pennsylvania allows for tolling based on the "discovery rule," which

"delays the running of the statute until the plaintiff knew, or through the exercise of reasonable

diligence should have known, of the injury and its cause," *Beauty Time, Inc. v. VU Skin Sys.,*

*Inc.*, 118 F.3d 140, 144 (3d Cir. 1997) (quotations omitted), and based on fraudulent

concealment.   *See* 42 Pa. Cons. Stat. § 5504; *see also Aivazoglou v. Drever Furnaces*, 613 A.2d

595, 598 (Pa. Super. Ct. 1992).   "As the discovery rule has developed, the salient point giving

rise to its application is the inability of the injured, despite the exercise of reasonable diligence,

to know that he is injured and by what cause." *Fine v. Checcio*, 870 A.2d 850, 858 (Pa. 2005).

"[T]he reasonable diligence standard is objective, as the question is not what the plaintiff

actually knew of the injury or its cause, but what he might have known by exercising the

diligence required by law." *Nicolaou v. Martin*, 195 A.3d 880, 893 (Pa. 2018).  (citations

omitted).   However, "the objective reasonable diligence standard is 'sufficiently flexible . . . to

take into account the differences between persons and their capacity to meet certain situations

and the circumstances confronting them at the time in question.'"   *Id.* (quoting *Fine*, 870 A.2d at

858).   "Under Pennsylvania's fraudulent concealment doctrine, the statute of limitations is tolled

where the defendant undertakes an 'affirmative and independent act of concealment that would

prevent the plaintiff from discovering the injury despite the exercise of reasonable

8

diligence.'" *Barren v. Allegheny Cty. Pennsylvania*, 607 F. App'x 130, 131–32 (3d Cir. 2015)

(per curiam) (quoting *Bohus v. Beloff*, 950 F.2d 919, 926 (3d Cir. 1991)).

Sperow's claims related to the seizure of his property and the searches that led to those

seizures are clearly time-barred based on the allegations of the Complaint.  Although it is not

clear when Sperow delivered his Complaint to prison authorities for mailing, the Complaint is

dated March 12, 2020, so that is the earliest possible date of filing.  The challenged searches and

seizures occurred on April 23, 2014 and October 15 and 16, 2015.

Sperow had a complete cause of action on the dates the searches and seizures occurred,

and his allegations detailing his correspondence with the Sheriff's Department and Probation

Department reflect that he knew or should have known of those searches and seizures shortly

after they occurred, even if he might have been unaware of some specific information.

Furthermore, Sperow's motion for return of the seized property, in which he alleged that the

underlying searches and seizures were unjustified, confirms actual knowledge of his injuries and

ability to pursue his claims in September 2016.  As Sperow filed his Complaint years after the

statute of limitations expired, his claims based on the seizures of his property and the searches

that led to those seizures are clearly time-barred.[4]  *See e.g.*, *Barren*, 607 F. App'x at 132 (claims

filed in 2014 based on searches and seizures of property in 2003 were time-barred because

---

[4] Even if the Complaint could be understood to suggest that Sperow was unaware of the October
16, 2015 search and seizure until he received receipts reflecting the confiscated property on July
18, 2017 and August 7, 2017, (ECF No. 2 at 29), his Complaint is still untimely as to those
searches and seizures because it was filed more than two years after he knew of the basis for his
claims.  Additionally, although the Court does not read Sperow's Complaint as raising claims
based on his arrests, any such claims would also be time barred.  *See Montgomery v. De Simone*,
159 F.3d 120, 126 (3d Cir. 1998) ("[T]he two-year limitation period for Montgomery's section
1983 false arrest and false imprisonment claims began to run on . . . the night of Montgomery's
arrest and detention.").

plaintiff "knew or reasonably should have known that he was injured by the allegedly unlawful searches and seizures at the time they occurred") (per curiam); *Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 861 (3d Cir. 2014) (illegal search and seizure claims filed in 2011 were time barred when the search occurred in 2004 and the record demonstrated that the plaintiff "knew about the allegedly unlawful search and seizure by March 2005 at the latest, and thus had a complete cause of action at that time"); *Francis v. Miligan*, 530 F. App'x 138, 139 (3d Cir. 2013) (per curiam) (claims were time-barred when pro se litigant filed complaint more than two years after he knew "his car had been searched without his consent and that his property had been seized").  Accordingly, the Court will dismiss all Sperow's claims based on the seizure of his property and the related searches.[5]

All that remain are Sperow's claims based on the failure to return his property or to permit him to transfer the property to a third party.   These claims are also time-barred.  The Complaint alleges in detail the numerous specific steps taken by Sperow over the course of

---

[5] To the extent Sperow alleges that the seizure of his property somehow resulted in the violation of his right to counsel in his criminal cases, a civil rights plaintiff may not raise claims challenging the validity of a conviction unless that conviction has been reversed or otherwise invalidated, and claims subject to that rule do not accrue until "favorable termination" is achieved.  *See Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994) ("[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.") (internal citation and footnote omitted); *Curry v. Yachera*, 835 F.3d 373, 379 (3d Cir. 2016) ("[T]he statute of limitations begins to accrue when the termination of criminal proceedings becomes favorable; that is, when 'the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus.'" (quoting *Heck*, 512 U.S. at 489)).  However, regardless of both *Heck* and the statute of limitations, this claim is baseless because it is apparent Sperow had the benefit of counsel in his criminal cases and his Complaint does not plausibly connect the seizure of his firearms to a constitutional deficiency in his criminal proceeding.

several years to retrieve or transfer possession of his firearms, including visiting the Sheriff's Department (*id.* at 22), obtaining permission from the Probation Department in 2015 to transfer possession of his firearms based on a notarized document from his designee, (*id.* at 23), writing letters, (*id.* at 34-38), and filing a motion in state court for the return of property in 2016, (*id.* at 30).  When Sperow's motion was denied, he pursued appeals in the state courts, unsuccessfully, which were finally resolved in 2017.  (*Id.* at 36.)  In connection with those state-court proceedings, Sperow argued that the Defendants possessed his property "without due process or justification of the law" and that he "had attempted to retrieve/transfer his property for quite some time after it had been confiscated . . . but he was always met with 'no-response' by both state offices.'" (*Id.* at 31.)

Sperow alleges that on August 7, 2017 he received a complete list of property seized in 2015, and that on August 10, 2017, his designee was permitted to retrieve certain items, which did not include the seized firearms.  (*Id.* at 34-35.)  On October 14, 2017, Sperow received a list of all firearms that had been confiscated.  (*Id.* at 36-37.)  Following subsequent correspondence, he received a letter on January 22, 2018 stating that he was ineligible to possess his firearms and that they would not be returned to him nor would he be permitted to transfer them to a third party.  (*Id.* at 37.)  On January 25, 2018, Sperow wrote another letter to which he attached two "documents which showed that he had been trying to retrieve/transfer his firearms . . . long before [he] received any charge which rendered him ineligible from possessing a firearm, and thus, his firearms are eligible to be transferred to [his] POA without further litigation." (*Id.* at 38.)  Sperow received a response to that letter on April 19, 2018, which indicates his firearms would not be returned.  (*Id.*)

It is apparent from Sperow's allegations that he knew or should have known of the

Defendants' refusal to return or transfer possession of his property more than two years before he

filed his Complaint in the instant civil action in March 2020.  Sperow was sufficiently aware of

his injuries to file a motion for return of property in state court in 2016 and to pursue appeals

through 2017.  It is apparent, then, that he also could have pursued any related § 1983 claims at

that time as he had a complete cause of action and knowledge of the relevant facts.  *See*

*McCreary v. Redevelopment Auth. of City of Erie*, 427 F. App'x 211, 215 (3d Cir. 2011) (per

curiam) (rejecting argument that "federal claims should not be deemed to have accrued until

[plaintiff] learned that the state courts would not 'provide due process' on her challenge to the

Authority's decision to reclaim the property").

Nor is there a basis for tolling here.  To the extent Sperow might argue for tolling because

he not have a complete list of the items seized, he had sufficient information to understand that

certain of his property had been confiscated and that he had been harmed by the seizure; in any

event, he had the entire list of that property in 2017.  Furthermore, some of his property was

transferred to a designee on August 10, 2017, so any claims related to that property had been

fully resolved by that date.  The correspondence in January 2018 again confirmed that the

firearms would not be returned. Surely then, Sperow was well-aware of the events giving rise to

his claims and his injuries more than two years before he filed the instant lawsuit.  Accordingly,

his claims are time-barred.  *See, e.g.*, *Shalhoub v. Depreta*, 439 F. App'x 106, 108 (3d Cir. 2011)

(per curiam) (tolling did not apply because if plaintiff had proceeded with reasonable diligence

after serving his sentence, "he would have realized soon thereafter that the defendants—despite

the promises that they had allegedly made—did not intend to return his property"); *Shaffer v.*

*York Cty., Pennsylvania*, Civ. A. No. 09-CV-1315, 2009 WL 10716285, at \*3 (M.D. Pa. Oct. 8,

2009) (second amendment claims were time-barred because "[a]lthough the plaintiff began efforts to have his firearm permit returned to him, and was denied a return of his permit for some period of time, it is clear that his complaint alleges on Second Amendment grounds that the revocation of his permit that occurred more than two years before his complaint was filed as his cause of action.").

The continuing violation doctrine also does not save Sperow's claims. "Under that doctrine 'when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period.'" *Montanez v. Sec'y Pennsylvania Dep't of Corr.*, 773 F.3d 472, 481 (3d Cir. 2014) (quoting *Colwell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001)). However, "the continuing violation doctrine does not apply when the plaintiff 'is aware of the injury at the time it occurred.'" *Id.* (quoting *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 417 n.6 (3d Cir. 2003). Additionally, "a 'continuing violation is occasioned by continual unlawful *acts,* not continual ill effects from an original violation.'" *Id.* (quoting *Weis-Buy Servs., Inc. v. Paglia*, 411 F.3d 415, 423 (3d Cir. 2005)).

The only act alleged within the limitations period is that an attorney for the Sheriff's Department responded to one of Sperow's letters reiterating that his firearms would not be returned. (ECF No. 2 at 38.) But that was after the lengthy, years-long back and forth about the firearms, unsuccessful litigation in state court about the issue, and correspondence in January 2018 (more than two years before Sperow's Complaint was filed) stating that the Sheriff's Department would not relinquish the firearms to Sperow nor allow him to transfer them to a designee. Accordingly, the letter that Sperow received on April 19, 2018, within the limitations period, represents a continual ill effect from the original violation, *i.e.*, the refusal to return the

firearms or permit their transfer.  *See Andrews v. Borough of Collingdale*, 329 F. App'x 373, 376 (3d Cir. 2009) (per curiam) (continuing violation doctrine did not save time-barred claims where "[t]he mere fact that [appellants] continued to be affected by the repercussions of these initial acts does not render their claims regarding these earlier actions timely"); *see also Gould v. Borough*, 615 F. App'x 112, 117 (3d Cir. 2015) (state court litigation did not delay accrual date of claims because "adverse appellate decisions do not reflect 'continual unlawful *acts*' by defendants but rather 'continual ill effects' of their alleged misconduct.").[6]  The Defendants actions also had a degree of permanence more than two years before Sperow filed his Complaint such that he should have been aware of a duty to assert his rights, as reflected by his filing of a motion for return of property in state court.  *See Wisniewski*, 857 F.3d at 158 ("[W]e agree that the District Court properly concluded that the continuing violations doctrine does not apply to Wisniewski's claims, as defendants' actions 'had a degree of permanence which should trigger [his] awareness of and duty to assert his[ ] rights.'" (quoting *Cowell*, 263 F.3d at 292 (alterations in original).

In sum, Sperow knew or should have known of the basis for his claims more than two years before he filed his Complaint.  Accordingly, his § 1983 claims are all time-barred.

### B.  State Law Claims

Sperow also raises claims under Pennsylvania law.  However, 28 U.S.C. § 1332(a) provides the only independent basis for this Court's jurisdiction over those claims.[7]  That

---

[6] To the extent Sperow raises due process claims based on how his motion for return of property and related appellate proceedings were handled, not only are those claims time-barred, but it is not clear how judges' resolution of these matters is attributable to the Defendants.

[7] The Court will not exercise supplemental jurisdiction over those claims, having dismissed all federal claims.

provision grants a district court jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain.  *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011).  "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment."  *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010).  The Complaint suggests that Sperow and some, if not all, of the Defendants are Pennsylvania citizens.  Accordingly, complete diversity is lacking, and these claims will be dismissed for lack of subject matter jurisdiction.

## IV.     CONCLUSION

For the foregoing reasons, the Court will grant Sperow leave to proceed *in forma pauperis*, dismiss his federal claims as time-barred pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and dismiss his state claims for lack of subject matter jurisdiction.  Sperow will not be given leave to amend because amendment would be futile.  An appropriate Order follows.

**BY THE COURT:**

**/S/ JOHN R. PADOVA**

—————————————————————

**JOHN R. PADOVA, J.**